MILTON F. JONES & others *vs.* INHABITANTS OF NATICK
& others.

Middlesex.   February 26, 1929. — June 5, 1929.

Present: RUGG, C.J., CROSBY, PIERCE, CARROLL, & WAIT, JJ.

*Municipal Corporations*, Officers and agents.

At the hearing of a suit in equity under G. L. c. 40, § 53, to enjoin the carrying out of a vote of a town to pay a certain sum to a former employee "for overtime service rendered in the street department of the board of public works," there was evidence that for nearly two years and ten months just previous to the end of his employment the employee had been paid by checks which he indorsed under a printed statement reading, "This check when properly endorsed is in full payment of account, as follows"; that he was possessed of sufficient intelligence to comprehend the meaning of the words printed on the back of the checks and that he should have understood that he received said checks in full payment for work done to the date of each; and that requests he made of, and complaints he made to his superiors during that period did not relate to claims for overtime services but to an increase in his regular wages. The trial judge concluded that the vote of the town was not by way of compromise of a doubtful claim made against it by the employee, but was in substance and effect a mere gratuity, and granted the injunction sought. *Held*, that the conclusions reached by the judge and the decree entered were proper.

BILL IN EQUITY, filed in the Superior Court on April 24, 1928, by fifteen inhabitants of the town of Natick under G. L. c. 40, § 53.

The suit was referred to a master. Material facts found by the master are stated in the opinion. By order of *F. T. Hammond*, J., a decree was entered as prayed for. The defendant Porter appealed.

The case was submitted on briefs.

*W. J. Patron & F. D. McCarthy*, for the defendant Porter.

*J. W. Brennan*, for the plaintiffs.

*W. R. Bigelow*, for Inhabitants of Natick.

CROSBY, J.   This is a bill in equity by fifteen taxpayers to restrain an alleged illegal expenditure of money by the

town of Natick. At an adjourned town meeting held on April 17, 1928, under article 78 of the warrant it was voted that the town reimburse the defendant John T. Porter in the sum of $1,202.64 "for overtime service rendered in the street department of the board of public works."

The case was referred to a master whose findings of fact in the absence of a report of the evidence must stand. The master found the following facts: Porter was engaged by one Oakes, foreman of the highway division of the public works department of Natick, as a laborer in August, 1923, and was paid at the rate of $5 for an eight hour day of actual work performed; three days after his employment began and as long as it continued he drove a pair of horses; his wages at $5 for each eight hour day continued for a little more than a year and during this time he received various sums for overtime work. In October, 1924, he was made a "regular man" in the same division; his work was practically the same as before, but he had a more desirable job in that he received $27.50 weekly without regard to weather conditions or holidays and was allowed a vacation of one week each year with pay. He lived near the stable and was expected to be there in time to harness his horses and be at the place where his work was to be done by eight o'clock. In summer he quit work at 5 P.M. and in the winter at 4:30. He accepted this new position with longer hours and more money than he received when he worked for $5 a day of eight hours willingly and with a full realization of the demands of the job. Soon after he began receiving $27.50 weekly he complained to his foreman "of his long hours, . . . his complaints continued with some regularity during the remaining time of his employment," and although he made requests for overtime pay as well as for an increase of wages, "his requests and complaints related only to an increase of his regular wages." During his employment at $27.50 per week he was paid for overtime work during fifteen weeks, amounting to $47.50. All payments to him were made by checks drawn by the town treasurer and all were indorsed by him; on the back of each check was printed the following: "This check when properly endorsed is in full payment of account, as follows:" Then

follow columns headed "Date Dept Amount" all being left blank on the checks given to Porter.

The master further found that he was "possessed of sufficient intelligence to comprehend the meaning of the words printed on the back of the checks; that he should have understood that he received said checks in full payment for work done to the date of each"; that Porter's first request for pay for overtime was made to the board of public works at a meeting held a few weeks after he gave up his work; that in July, 1926, he presented an itemized statement claiming $1,625.93 for overtime work; that the sum of $1,202.64, voted by the town in 1928, is the amount of a subsequent itemized statement prepared by him. The master states that "looking at the alleged claim for overtime most favorably to the defendant I find that, if seasonably demanded, he might have been entitled to overtime pay in accordance with the following schedule . . . ." This schedule left a possible balance due of $49.72.

The master also found that Porter was entitled to overtime only when he was called out for plowing snow and while caring for a sick horse, and not for the regular care of horses night and morning, or time consumed in travel to and from his place of work; that a large part of his claim is based upon his regular care of horses and travel to and from his place of work, being at the uniform rate of two hours a day and twelve hours a week.

The defendant Porter filed eleven objections to the master's report, all of which were considered by the trial judge and an interlocutory decree was entered overruling the objections and confirming the report. Thereafter a final decree was entered perpetually enjoining the payment at any time to Porter by the town or by its servants or officers of said $1,202.64. "It is in the power of towns to settle claims which may be made upon them arising out of their administration of their municipal affairs. A vote to appropriate money for such a purpose is therefore binding upon them, even if upon subsequent examination it is ascertained that the claim which was to be settled thereby was one which could not have been successfully maintained. *Nelson* v.

*Milford,* 7 Pick. 18.   *Bancroft* v. *Lynnfield,* 18 Pick. 566. They have no authority to appropriate money for gratuities to persons whose situation may appeal to public sympathy." *Matthews* v. *Westborough,* 131 Mass. 521, 522; *S. C.* 134 Mass. 555.   *Fowler* v. *Selectmen & Treasurer of Danvers,* 8 Allen, 80.   *Cooley* v. *Granville,* 10 Cush. 56.   *Tash* v. *Adams,* 10 Cush. 252.   *Greenough* v. *Wakefield,* 127 Mass. 275.   *Whittaker* v. *Salem,* 216 Mass. 483, 485.   There is no doubt that a town may pay a part of a genuine claim made upon it by way of compromise. *Matthews* v. *Westborough, supra. Prout* v. *Pittsfield Fire District,* 154 Mass. 450, 453.   *Wells* v. *Putnam,* 169 Mass. 226.

The fact that the plaintiff was employed by the town from August 16, 1923, until June 5, 1926, and during all that time was paid by checks indorsed by him, each check having a statement printed on the back that it was in full payment, was evidence that the plaintiff was not entitled to be paid for overtime.   This evidence, together with the other findings of the master, warranted the conclusion of the trial judge that the vote of the town was not by way of compromise of a doubtful claim made against it by Porter, but was in substance and effect a mere gratuity. *Worcester Color Co.* v. *Henry Wood's Sons Co.* 209 Mass. 105, 109.   *Young* v. *Canada, Atlantic & Plant Steamship Co. Ltd.* 211 Mass. 453, 458.   *Woods* v. *Woburn,* 220 Mass. 416, 420.

The findings that Porter indorsed the checks, that he made no request to the board of public works for overtime until some weeks after he ceased to work, and the other findings of the master, warranted a finding by the trial judge that Porter had no valid claim for such work, and that the vote of the town was not by way of compromise.   Besides, when Porter was given a better job at higher wages than he had previously received and was required to work longer hours, the judge could have found that he was not entitled to be paid for overtime but that all the work he performed was to be done for $27.50 a week, which he received regardless of weather conditions or holidays.

It results that the final decree must be affirmed.

*Ordered accordingly.*